**Ray C. MURPHY et al., Appellants,**

v.

**The AETNA CASUALTY & SURETY COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 10, 1969.

William E. Baker, Louisville, for appellants.

Kent McElwain, Stites & McElwain, Louisville, for appellees.

DAVIS, Commissioner.

In this workmen's compensation proceeding, the question is whether a policy of insurance issued by Aetna to Lon Terry and Ted Terry, d/b/a Terry's Masonry, affords coverage to the appellant, Ray C. Murphy, who presented a compensation claim asserting that he was injured on or about September 10, 1966, while employed by Terry's Masonry. The Board found as fact that the partnership known as

Terry's Masonry was the employer of Murphy, so that the insurance was effective. On appeal to the circuit court, it was held that Murphy was not an employee of the partnership, and the insurance company was exonerated of liability. This appeal challenges that ruling of the circuit court.

Several members of the Terry family are brick masons and have pursued that occupation in and around Louisville for a number of years. Lon Terry is the father of Ted Terry. In December of 1965, Lon and Ted Terry orally formed a partnership known as Terry's Masonry and obtained insurance from Aetna affording coverage for workmen's compensation liability, arising out of the activities of the partnership. The policy was issued December 2, 1965, and provided a one-year term through December 2, 1966.

Ted Terry testified that he and his father orally dissolved their partnership, although he was not consistent in fixing the exact time of the partnership dissolution, noting at one point in his testimony that it occurred in December of 1965 and stating at another place in the evidence that it was in May 1966. It is unquestioned that Aetna was never notified by anyone of the claimed termination of the partnership of Lon Terry and Ted Terry, d/b/a Terry's Masonry. Lon did not testify.

It appears that Ted Terry had masonry projects at Foxboro Manor and Cross Creek developments in Louisville in the Spring of 1966, and appellant Murphy worked as a bricklayer at each of those places. There was evidence that Ted Terry used checks drawn on Terry's Masonry to pay wages to Murphy and other employees on those projects. Although Ted testified that his father was not a partner with him on those jobs, he admitted that Lon had worked some of the time on the projects. Ted's uncles, brothers of Lon, Lyman Terry and Edwin Terry, also are brick masons, and from time to time each of them worked on various projects in the Terry family.

Murphy sustained an injury which resulted in the loss of sight in his left eye while working at Carrollton on a residence for Dr. Ford. Ted Terry testified that he "took the [Ford] job because I had slack time, I couldn't get no old brick at Foxboro or Cross Creek neither one, and I took the job before it was ready because I lived up in Carrollton. * * * And when I couldn't get to it I asked Dad and, him and Lyman was working together at, both of them had worked for me prior to this and I was in Bahama Islands while they was doing that job up there. Dad was running my job for me and Lyman was running that job up there."

At least four claims for workmen's compensation for employees of Terry's Masonry were submitted to Aetna and paid by the company without incident during 1966, after the date of the alleged dissolution of the partnership. An employee of Aetna testified that the policy was renewed on its expiration date but was subsequently canceled for nonpayment of premium in January 1967. On the occasion of the cancellation, Aetna notified the Workmen's Compensation Board that the insurance was no longer effective. No such notice of cancellation had been furnished to the Board previously.

The evidence before the Board reflects that the various members of the Terry family assisted each other in performing masonry contracts at various times and places. The testimony supports the inference that Lon would handle one job while Terry was handling another. It is manifest that Lon and Ted did not regard as important the usual business formalities observed in forming and dissolving partnerships.

Murphy testified that Lon asked him to work at the Carrollton job and inquired of him what Ted had been paying him and agreed to pay the same rate. As noted, Ted admitted that he procured the

Carrollton contract but asserted that he did so on his own account and later turned the job over to his father for his sole account.

The Board was unpersuaded by the evidence in behalf of Aetna. The circuit court, in reversing the action of the Board, analyzed the evidence and concluded that the Board's finding that Murphy was employed by Lon and Ted Terry, d/b/a Terry's Masonry, was not supported by evidence of probative value. It is our view that the circuit court erred in so holding, as we regard the total circumstances presented in the evidence as sufficient to support the Board's conclusion that Murphy was indeed an employee of Lon and Ted Terry, d/b/a Terry's Masonry, at the time he was injured, despite the uncorroborated evidence of Ted Terry that the partnership had been orally dissolved.

We summarize the circumstances which we deem sufficient as a predicate for the Board's factual determination: Admittedly, Lon and Ted Terry did form a partnership and obtained workmen's compensation insurance which they never canceled. Claims against that insurance were presented in the name of Terry's Masonry quite some time after the alleged oral dissolution. Checks drawn in the name of the partnership were issued after the alleged dissolution, and Murphy drew some of them. The activity of the family in carrying on masonry work was not noticeably altered during the pertinent period, in that Ted was in charge of the work at Foxboro and Cross Creek in which Lon and Lyman participated in varying degrees, whereas Lon was in charge at Carrollton although Ted had procured the contract. In all these circumstances we think the Board properly exercised its prerogative as the fact finder and remained unpersuaded by Ted's evidence that the partnership had been dissolved. In short, we hold that the Board did have substantial evidence of probative value to sustain its finding and award, and the

circuit court erred in finding to the contrary. KRS 342.285(3)(d).

We do not have before us and express no opinion as to the rights, if any, of Aetna as to the Terrys.

The judgment is reversed with directions to enter a new judgment affirming the Board's award.

All concur.